NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH DISANTO, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BEST BUY STORES, L.P. and BEST BUY CO., INC.,<br><br>Defendants. | Civil Action No.: 09-4727 (PGS)<br><br><br>OPINION |

SHERIDAN, U.S.D.J.,

This matter comes before the Court on Defendants Best Buy Stores, L.P. and Best Buy Co., Inc.'s (collectively "Best Buy") motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

Plaintiff alleges five causes of action in his putative class action complaint: (1) violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1 *et seq.*;(2) breach of the covenant of good faith and fair dealing; (3) declaratory relief that Best Buy's practices are unlawful; (4) unjust enrichment; and (5) injunctive relief.[1]

**I.    STATEMENT OF FACTS**

Pursuant to the Class Action Fairness Act ("CAFA"), Plaintiff initiates this putative class

---

[1] Injunctive relief is pled as a separate, independent cause of action.

action on behalf of himself and all other persons who were "damaged by Best Buy's failure to abide by its expressly stated and advertised 'price match guarantee.'" (Am. Compl. ¶ 1.) Plaintiff, Joseph DiSanto, is a New York resident and Defendants are Minnesota corporations. Best Buy has store locations in Bridgewater and Woodbridge, New Jersey, and Plaintiff alleges that the acts that give rise to the instant law suit occurred in these locations in February 2008, July 2008, and February 2009.

Best Buy is the largest speciality retailer of consumer electronics in the United States and Canada. (*Id.* ¶ 2.) Best Buy promotes a "price match guarantee" as part of its advertising and promotional efforts. (*Id.*) Best Buy guarantees that "it will match any local competitor's lower price" and if a customer has already purchased that product, then Best Buy will refund the entire price of the product plus ten percent. (*Id.*) The price match guarantee is promoted in several ways, including (a) advertising in Best Buy's Sunday circular, (b) displaying nine panel signs in the store, (c) including it on store pads and the Best Buy website, and (d) advertising it in commercials. (*Id.* ¶ 22.) This advertising was consistent with Best Buy's motto: "Beat everybody, everyday, everywhere on everything." (*Id.* ¶ 24.) Plaintiff alleges that because this price match guarantee is actually unprofitable and has "a significant negative impact on its margins and revenue, Best Buy has an undisclosed policy to aggressively discourage and deny customers' proper price match requests." Plaintiff refers to this as Best Buy's "Anti-Price Matching Policy." (*Id.*) Plaintiff alleges that Best Buy clearly specifies this Anti-Price Matching Policy to its employees, but does not disclose it to customers who attempt to apply for a price match under the policy. (*Id.*)

Plaintiff alleges that Best Buy's "Anti-Price Matching Policy" has been confirmed by former Best Buy employees; that it is "disseminated from corporate headquarters and techniques and

barriers for denying proper price match requests are taught at Best Buy facilities." (*Id.* ¶ 3.) Plaintiff alleges that most "glaring" of these techniques is Best Buy's use of a secret, false "intra-net" website used on internal Best Buy kiosks by which prices are manipulated in order to deny customers' proper price match requests. (*Id.* ¶ 4.)[2] Plaintiff alleges that the Best Buy in-store kiosks purportedly shows customers the Bestbuy.com website; however, according to Plaintiffs, the "Bestbuy.com" tab on the kiosks actually brings consumers to a different electronic page that is configured to look exactly like the Bestbuy.com website, but actually displays an internal website with the higher in store prices. (*Id.*) The Best Buy price match guarantee states that any consumers who purchase items in the Best Buy store are entitled to a lower price if found on the Bestbuy.com website. Plaintiffs allege that "[t]he creation and design of the in-store kiosk computer screens were done at Best Buy's corporate direction."

Plaintiff alleges that "Best Buy settled on an impermissible middle ground: accept the 'front door' benefits of using the price match guarantee in its advertising, promotions and as a sales closing tool, while defending the 'back door' by 'aggressively discouraging and denying customers' proper price match requests." (*Id.* ¶ 28.)

Plaintiff further alleges in the complaint that at least one former Best Buy supervisor has remarked as follows:

- Best Buy has an undisclosed Anti-Price Matching Policy;
- The Anti-Price Matching Policy is disseminated from corporate headquarters;

---

[2] Plaintiff alleges in the complaint that this specific practice is currently the focus of a Connecticut Attorney General lawsuit. (*Id.* ¶ 4.)

- Barriers and techniques to proper price match requests are taught at Best Buy facilities;

- Best Buy provides financial bonuses based, in part, on denying proper price match requests; and

- Best Buy denies more than 100 proper price match requests per store per week.

The Complaint does not identify the former employee but ascribes the above statements to him.[3]

Plaintiff alleges that from approximately 2001 until July 17, 2005 Best Buy's price match guarantee was as follows:

> Price Guarantee We'll beat their lowest price. If within 30 days (14 days for computers, monitors, notebook computers, printers, camcorders, digital cameras and radar detectors) of your purchase from Best buy, you find a local competitor (excluding Internet offers) offering a lower price on an available product of the same brand and model, we will refund the difference plus another 10% of the difference.
>
> Bring us verification of the lower price, plus your original Best Buy receipt to claim your refund. Does not apply to specials, bonus or free offers and in California, cellular phones and pagers.

After July 17, 2005, Best Buy's "price match guarantee" was revised as follows:

> Here are two more great reasons for you to shop with confidence at Best Buy.
>
> If you are about to make a purchase and discover a lower price than ours, let us know and we'll match that price. Guaranteed.

---

[3] The majority of allegations in the complaint appear to be taken from the court's decision in *Jermyn v. Best Buy Stores, L.P.*, 256 F.R.D. 418 (S.D.N.Y. Mar. 19, 2009), which granted state-wide class certification for New York consumers on identical facts as here.

Additionally, the Complaint alleges that if the product had been already purchased then Best Buy provided that:

> We'll refund you the price difference, plus an additional 10% of that difference, up to 30 days after your purchase (14 days on select categories; please refer to the 14 day return period selection).  In either case, simply bring in proof of the price on the same available brand and model, from a local competitor.
>
> Either way, simply bring in proof of a local retail competitor's price on the same available brand and model, and we'll do the rest.

(*Id.* ¶ 35.)  A "local retail competitor" meant "[a] retail store located in the same market area as your local Best Buy store." (*Id.*)  Moreover, Plaintiffs allege that Best Buy "has defined a local competitor as a store that is authorized to sell consumer electronics.  It would not be a street vendor with a cart.  So a legitimate store." (*Id.* ¶ 37.)[4]

According to the Amended Complaint, on October 19, 2006, Phil Britton, a member of Best Buy's Competitive Strategies Group wrote in a document, "Competition Insider Templates":

> **Price Matches**
>
> It looms on the wall, on a 9 foot tall sign. Our Price Match policy. There it is, plain as day, in English (Y en espanol para los de usted que puede leerio.) However, just because it is our policy, do we abide by it? Does it really help the customer?
>
> What is the first thing we do when a customer comes in to our humble box brandishing a competitor's ad asking for a price match? We attempt to build a case against the price match. (Trust me, I've done it too). Let's walk through the "Refused-Price Match Greatest

---

[4] Plaintiff quotes several comments made by Best Buy employees, but does not provide the sources or identify any actual individuals in the complaint.  However, a quick review of the Southern District court's decision in *Jermyn* reveals that these quotations are taken from statements made in affidavits and during discovery in that case.  Here, Plaintiff copies the statements verbatim from the *Jermyn* opinion, but leaves out the sources and individuals who made these remarks during the course of that litigation.

>  Hits;"
>
>  Not same model? Not in stock at the competitor? Do we have a free widget with purchase? Is it from a warehouse club (they have membership fees, you know)? Limited Quantities? That competitor is across town? We've got financing! Is it an internet price? It's below cost! What about my NOP?

(*Id.* ¶ 51.)  Moreover, Plaintiff alleges that a document titled "Bundle Calculator" explains that "When a Customer Requests We Match a Competitors Price"

>  - The tool will then need to calculate the expected profit (loss) on the sale so the store employees can decide whether or not to match the price.
>  - After reviewing the profit, the store could decide to accept, or reject, the competitors [sic] price.

(*Id.* ¶ 52.)

Plaintiff alleges three discrete events where he was wrongfully denied a price match request. For all three incidents, Plaintiff alleges that he "devoted time and expended resources, including money, traveling to, shopping at and dealing with Best Buy." (*Id.* ¶¶ 68, 79, 91.)

First, in February 2008, Plaintiff alleges that he was aware of the price match guarantee and he went to Best Buy in Woodbridge, New Jersey in order to apply for the guarantee.  Plaintiff alleges he visited a competitor's store, P.C. Richard, shopping for a Toshiba television and found the same brand and model for a lesser price.  (*Id.* ¶¶ 60-68.)  Plaintiff alleges that he brought verification of the lower price to the Woodbridge store and requested that Best Buy match the valid price request. (*Id.*)  Plaintiff alleges that "Best Buy refused to honor its stated 'price match guarantee.'" (*Id.*) However, Plaintiff does not allege that he purchased the television at Best Buy or a different location.

Second, in July 2008, Plaintiff alleges that he once again returned to the Woodbridge store after finding "a lower price on available product of the same brand and model, a television" at P.C. Richard. Plaintiff again alleges that he was denied a price match request after profferring valid verification of the lower price. Plaintiff simply identifies the item at issue as a "television." (*Id.* ¶¶ 71-79.) As with Plaintiff's first alleged price-match denial, Plaintiff did not purchase the television at Best Buy on this occasion.

Third, in February 2009, Plaintiff found that Walmart, a local competitor, offered "a lower price on an available product of the same brand and model, DVD movies." Plaintiff visited Best Buy in Bridgewater, New Jersey and requested that they match the lower price under the guarantee. Plaintiff alleges he had a "valid price match request" and that Best Buy refused to honor his demand. This is the only allegation in the Complaint where Plaintiff actually purchased the product at Best Buy after being denied a price match request. Plaintiff does not allege how much the DVDs cost or the difference in price with the DVDs at Walmart.

## II.   DISCUSSION

Best Buy moves this Court to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6). Defendants spend a majority of their brief arguing that plaintiff's class action allegations should be dismissed. However, Plaintiff has not yet moved for class certification and no class certification discovery has occurred. The case is still at its initial pleading stages. While in some cases it may be appropriate pursuant to Rule 12(b)(6) to dismiss class pleadings that are entirely inadequate, this is not such a case.[5] Plaintiff has sufficiently alleged a putative class action

---

[5] There are currently at least three other pending federal court actions concerning the Best Buy Price Match Guarantee. *See Jermyn v. Best Buy Stores L.P.*, 256 F.R.D. 418 (S.D.N.Y. 2009); *Laff v. Best Buy Stores, L.P. and Best Buy Co., Inc,* No. 09 C 6649, 2010 WL 2220581

to survive the pleading stage. Defendants arguments against class certification should be reserved for a more appropriate time, and will not be considered here. Best Buy makes the following arguments in favor of dismissal:

(1) Plaintiff fails to plead fraud with particularity as required by Rule 9(b) as it relates to Plaintiff's NJCFA claims. (2) Plaintiff has failed to sufficiently plead facts that demonstrate he qualified for a price match guarantee; (3) Plaintiff fails to adequately plead the elements for consumer fraud, breach of good faith and fair dealing, or unjust enrichment.

### A.    Motion to Dismiss–Standard of Review

On a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. *See, e.g.*, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. *Iqbal*, 129 S.Ct. at 1950.

While a court will accept well-pled allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See Iqbal*, 129 S. Ct. at 1949; *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir.1997). "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these

---

(N.D. Ill. June 3, 2010); *Truong, et al. v. Best Buy Stores, L.P., et al.,* No. SACV 09-00997-JVS (MLGx), (C.D. Cal. June 7, 2007). As of this writing, at least one court has granted a state-wide class action on similar if not identical facts. *See Jermyn*, 256 F.R.D. 418.

elements exist.'" *Kost v. Kozakewicz*, 1 F.3d 176, 183 (3d Cir.1993) (quoting 5A Wright & Miller, Fed. Practice & Procedure: Civil 2d § 1357 at 340). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted); *see also Iqbal*, 129 S. Ct. at 1949-50.

<u>The New Jersey Consumer Fraud Act</u>

NJCFA claims are subject to the heightened pleading standards of Rule 9(b). *Nelson v. Xacta 3000 Inc.,* Civil Action No. 08-5426, 2010 WL 1931251, at *4-5 (D.N.J. May 12, 2010). Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b); *see Sheris v. Nissan N. Am., Inc.*, No. 07-2516, 2008 WL 2354908, at *6 (D.N.J. June 3, 2008); *Parker v. Howmedica Osteonics Corp.*, No. 07-2400, 2008 WL 141628, at *2 (D.N.J. Jan.14, 2008) ("[NJ]CFA claims sounding in fraud are subject to the particularity requirements of Federal Rule of Civil Procedure 9(b).") (quotation omitted).

"The purpose of Rule 9(b) is to provide notice of the precise misconduct with which the defendants are charged and to prevent false or unsubstantiated charges." *Rolo v. City Inv. Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir.1998) (internal quotation and citation omitted). "To satisfy this standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*

*v. Home Depot*, 507 F.3d 188, 200 (3d Cir.2007). Additionally, the allegations must state "who made a misrepresentation to whom and the general content of the misrepresentation." *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir.2004). "If this specific information is not readily available, a plaintiff may use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Nelson*, 2010 WL 1931251 at *5 (citing *In re Rockefeller Ctr. Props. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir.2002)).

Best Buy alleges that Plaintiff fails to allege whether any of his three price match attempts were for particular products that were in stock, or whether the requests were made within the applicable time periods. Additionally, Best Buy argues that Plaintiff fails to identify the exact brand and model of each product.

Plaintiff need not provide all possible facts or prove his entire case at the pleading stage. He must simply plead, with sufficient particularity, the elements of the NJCFA.

The NJCFA provides in relevant part:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J.S.A. § 56:8-2.[6] Pursuant to the NJCFA claim, a plaintiff must allege the following elements:

---

[6] The term "person" as used in the NJCFA includes, inter alia, natural persons, partnerships, corporations, companies, trusts, business entities and associations. N.J.S.A. § 56:8-1(d).

"(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff[s]; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 964 A.2d 741, 749 (2009).

"Unlawful practices under the NJCFA fall into three general categories: affirmative acts, knowing omissions, and regulation violations." *Nelson,* 2010 WL 1931251 at *5-6 (citing *Frederico*, 507 F.3d at 202). Moreover, an "[i]ntent to defraud is not necessary to show unlawful conduct by an affirmative act of the defendant, but is an element of unlawful practice by knowing omission of the defendant." *Id.* (citing *Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, No. 08-1057, 2008 WL 5381227, at *6 (D.N.J. Dec.17, 2008)).

Plaintiff sufficiently alleges unlawful conduct. He alleges that Best Buy had in place an undisclosed policy that was intended to subvert customers' attempts to comply with the price match guarantee. He alleges when the policy went into effect, the purpose of the anti-price matching policy, and alleges remarks by several former employees corroborating the claims. He also alleges a pervasive history of complaints to Best Buy by consumers that had been wrongly rejected under the price match guarantee. As to his own circumstances, when he attempted to make a request under the price match guarantee (February 2008, July 2008, and February 2009); he alleges the specific locations he visited in New Jersey (Woodbridge and Bridgewater) and he alleges that he brought verification of lower prices from two vendors that qualified under the policy (P.C. Richard and Walmart) and that he was denied the price match. This is enough at the pleading stage to satisfy Rule 9(b). Best Buy's arguments for dismissal, such as whether the claims were within the correct time period or whether alternate reasons existed for the denial are more appropriate considerations at summary judgment after the facts have been adduced.

In the instant case, Plaintiff's difficulty lies with proving he suffered an "ascertainable loss." Plaintiff alleges he made three price match requests to Best Buy in 2008 and 2009. However, in only one instance does Plaintiff allege that he made a purchase at Best Buy. In February 2008 and July 2008, Plaintiff alleges he was denied a price match by Best Buy (both times regarding televisions), but he never made any purchases at Best Buy. Only in connection with the third price match request in February 2009 did he actually purchase the product at the allegedly higher price. In order to prove "ascertainable loss" under the NJCFA, Plaintiff must be able to prove he suffered actual damage. *See Thiedemann v. Mercedes-Benz USA, LLC*, 183 N.J. 234, 248 (2005). Accordingly, under the NJCFA, "a private plaintiff must produce evidence from which a factfinder could find or infer that the plaintiff suffered an actual loss." *Id.* Plaintiff is unable to demonstrate any actual loss with his first two price match requests.[7] Therefore, the Court dismisses Plaintiff's NJCFA claim as to the allegations regarding the February 2008 and July 2008 price match requests. Likewise, because Plaintiff did not purchase any Best Buy products during these instances, he would be unable to demonstrate that Best Buy was unjustly enriched by any benefit. Therefore, as to Plaintiff's fourth count for unjust enrichment, the allegations as to February 2008 and July 2008 are similarly dismissed.

### Breach of Good Faith and Fair Dealing

Plaintiff alleges a claim for a "breach of good faith and faith dealing." This claim is

---

[7] Plaintiff conclusorily alleges that he expended fuel and driving time in going to Best Buy to make the price match request. This is clearly insufficient to plead a NJCFA claim. Such a broad and vague understanding of "ascertainable loss" would vitiate the entire requirement of showing actual loss. Ascertainable loss must be something "quantifiable or measurable." *See Dibenedetto v. Sparta Transmissions & Auto Repair, Inc.,* 2007 WL 2580506, at *6 (N.J. App. Div. Sept. 10, 2007). Inconvenience alone is not an ascertainable loss. *Id.* (holding that while plaintiffs demonstrated they were inconvenienced, that did not equal ascertainable loss).

misplaced, however, because it is dependent on the existence of a written contract, which is not pled. Pursuant to New Jersey law, in every contract there is an implied covenant of good faith and fair dealing. *See Sons of Thunder, Inc. v. Borden, Inc.,* 148 N.J. 396, 420 (1997). In order to allege a "breach of good faith and fair dealing" it is necessary that an actual contract exists between the parties. *DiCarlo v. St. Mary Hosp.,* 530 F.3d 255, 266 (3d Cir. 2008) ("The court dismissed [the breach of good faith and fair dealing claim] because of the plaintiffs' inability to demonstrate the existence of a contract between the hospitals and the government entities."); *accord J.M. ex rel. A.M. v. East Greenwich Tp. Bd. of Educ.,* 2008 WL 819968, at *9(D.N.J. 2008) ("The covenant of good faith and fair dealing is implied in every contract in New Jersey; thus, it is axiomatic that a contract must exist between two parties before a court will infer this covenant.") Plaintiff does not allege the existence of a contract with Best Buy that would allow a claim for a breach of good faith and fair dealing. Therefore, Plaintiff's second count is dismissed.

**CONCLUSION**

For the foregoing reasons, the Court grants Defendants' motion to dismiss Count I (NJCFA) and Count IV (unjust enrichment) only as to the first two price match requests and denies it as to the February 2009 price match request. Count two is dismissed in its entirety. Plaintiff's third and fifth causes of action request declaratory and injunctive relief. These remedies are dependent on the claims the Court has allowed to move forward. Therefore, Defendant's motion to dismiss these two counts is denied.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.

August 31, 2010